THOMAS P. O'BRIEN
United States Attorney
CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division
DANIEL J. O'BRIEN (CA Bar Number 141720)
Assistant United States Attorney
Major Frauds Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Email: daniel.obrien@usdoj.gov
    Telephone: (213) 894-2468
    Facsimile: (213) 894-6962
Attorney for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR No. 08- **CR08-01189** |
| Plaintiff, | PLEA AGREEMENT |
| v. | |
| CAPITAL DATA PRODUCTS LLC, | |
| Defendants. | |

1. This constitutes the plea agreement between Capital Data Products LLC ("defendant"), by its agent John Tucker, and the United States Attorney's Office for the Central District of California ("the USAO") in the above-captioned case. This agreement is limited to the USAO and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities.

PLEA

2. Defendant gives up the right to indictment by a grand jury and agrees to plead guilty to a single-count information in

the form attached to this agreement or a substantially similar form.

## NATURE OF THE OFFENSE

3.  Defendant is criminally responsible for the acts of its agent when:

    a.  the agent commits a criminal act;

    b.  the agent acts within the scope of his authority or apparent authority; and

    c.  The intent of the agent was to benefit the corporation.

4.  In order for defendant to be guilty of the charge brought in the Information, which charges Conspiracy to Defraud the Government with Respect to Claims in a violation of Title 18, United States Code, Section 286, the following must be true:

    a.  First, there was an agreement between two or more persons to defraud the United States, or any department or agency thereof, by obtaining payment from the United States for a false or fraudulent claim;

    b.  Second, the defendant, through its agents, became a member of the conspiracy knowing its object and intending to help accomplish it; and

    c.  Third, one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

5.  Defendant admits that it is, in fact, guilty of the offense of Conspiracy to Defraud the Government with respect to Claims as described in the Information.

## PENALTIES AND RESTITUTION

6. The statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 286 is: 5 years probation; a fine of $500,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $400.

7. Defendant agrees to pay restitution to the United States in the amount of $137,919.96.

## FACTUAL BASIS

8. Defendant and the USAO agree and stipulate to the statement of facts provided below. This statement of facts includes facts sufficient to support a plea of guilty to the charge described in this agreement and to establish the sentencing guideline factors set forth in paragraph 11 below. It is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to defendant that relate to that conduct.

Defendant is a limited liability corporation headquartered within the Central District of California and engaged in the business of selling toner cartridges to businesses throughout the United States. Defendant operated its business in concert with several affiliates, Key Data Systems ("KDS"), Patriot Imaging (PI"), Advanced Systems, Inc. ("ASI"), and Big Sky Computer Products ("BSCP"). Among Capital's customers are military bases and government offices.

During the period 2001 through April 2003, agents of defendant made telephone sales of toner cartridges to government entities. Some of these sales involved a "price predication"

pitch, which involved the following steps: (1) a sale was made to a government entity for a certain number of toner cartridges at a certain price; (2) the account was then transferred to Capital's re-order department; (3) a sales person from the re-order department would call the customer and inform the customer that the original sale was predicated on the customer purchasing additional toner cartridges; (4) the sales person would, with the intent to defraud, falsely inform the customer that additional purchases of toner were required to close out the contract on the original sale, and (5) the sales person would cause an invoice to be issued to the government for the additional purchases.

During the time frame 2001 through April 2003, there was an agreement between two or more agents of defendant, employed as sales persons, acting within the scope of their employment, and with the intent, in part, to benefit defendant, to defraud the United States, and agencies and departments thereof, by selling toner cartridges to the United States using this price predication pitch, which contained materially false statements, and by obtaining payment from the United States for toner cartridges based upon false claims.

Multiple agents of defendant became members of the conspiracy knowing its object and intending to help accomplish it. As a result of these sales, the United States paid to defendant $137,919.96 for the sale toner cartridges that were based upon the false and fraudulent price predication pitch.

In furtherance of the conspiracy and to accomplish the objects of the conspiracy, agents of defendant caused various

overt acts to be committed within the Central District of California, including the following:

    a. On April 12, 2001, an agent of defendant, operating within the course and scope of their employment and with the intent to benefit defendant in part, telephoned a government employee at Davis Monthan Air Force Base, Arizona and falsely informed him that defendant was going to ship an additional four toner cartridges to complete his previous order, and that he had already agreed, and was obligated, to purchase the additional four cartridges.

    b. On February 27, 2003, an agent of defendant issued an invoice on behalf of defendant in the amount of $796.00 to a military employee in Washington, D.C., after using the price prediction pitch.

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

9. By pleading guilty, defendant gives up the following rights:

    a) The right to persist in a plea of not guilty.

    b) The right to a speedy and public trial by jury.

    c) The right to the assistance of legal counsel at trial. (In this regard, defendant understands that, despite its plea of guilty, it retains the right to be represented by counsel at every other stage of the proceedings.)

    d) The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

    e) The right to confront and cross-examine witnesses against defendant.

f)   The right, if defendant wished, to present evidence in opposition to the charges, including the right to call witnesses and to subpoena those witnesses to testify.

g)   Any and all rights to pursue any affirmative defenses, Constitutional claims, and other pretrial motions that have been filed or could be filed.

## SENTENCING FACTORS

10.  Defendant understands that the Court is required to consider the United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") among other factors in determining defendant's sentence.  Defendant understands that the Sentencing Guidelines are only advisory, and that after considering the Sentencing Guidelines, the Court may be free to exercise its discretion to impose any reasonable sentence up to the maximum set by statute for the crime of conviction.

11.  Defendant and the USAO agree and stipulate that the November 2001 edition of the Sentencing Guidelines applies and to the following applicable sentencing guideline factors:

Base Offense Level: 6 [U.S.S.G. § 2B1.1]

Specific Offense
Characteristics

  $400,000>Loss>$200,000: 12 [U.S.S.G. § 2B1.1(b)(1)]

Base Fine: $350,000    [U.S.S.G. § 8C2.4(d)]

Culpability score: 4 (5 base + 1 for >10 employees - 2 for
    acceptance) [U.S.S.G. § 8C2.5]

Fine range: $280,000 to $560,000 [U.S.S.G. § 8C2.7]

Probation of at least one year but not more than five years
    [U.S.S.G. § 8D1.2]

12. The stipulations in this agreement do not bind either the United States Probation Office or the Court. Both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation Office and the Court, (b) correct any and all factual misstatements relating to the calculation of the sentence, and (c) argue on appeal and collateral review that the Court's sentencing guidelines calculations are not error, although each party agrees to maintain its view that the calculations in paragraph 11 are consistent with the facts of this case.

13. For purposes of determining the applicable fine, the parties agree that defendant should be sentenced at the low end of the guideline range.

### DEFENDANT'S AND AGENT'S PLEA OBLIGATIONS

14. The president of defendant, John Tucker, by his signature to this agreement, agrees to fulfill the plea obligations of defendant contained within this agreement, to pay any criminal fines ordered by the Court within the time parameters established by the Court, and to appear at the change of plea hearing to designate counsel, James W. Spertus, to serve as the agent for defendant for purposes of defendant's entry of the plea of guilty. The parties agree to jointly ask the Court to order defendant to pay $137,919.96 in restitution, and $62,080.04 of the fine amount within 30 days of sentencing, and to pay the remaining $217,919.96 of the fine amount within 3 years of sentencing by, to the extent possible, making equal monthly installments of $6,053.33 for 36 months.

15. In connection with its plea, defendant agrees that it will:

    a) Plead guilty as set forth in this agreement.

    b) Abide by all sentencing stipulations contained in this agreement.

    c) Appear as ordered for all court appearances, pay any ordered fines and restitution, and obey any other ongoing court order in this matter.

    d) Pay the applicable special assessment at or before the time of sentencing.

    e) Adopt and implement a Code of Ethics and a Corporate Compliance Program for defendant and its affiliated companies, KDS, PI, ASI, and BSCP, acceptable to the USAO and the Probation Office. The Code of Ethics and Corporate Compliance Program will remain in place for a minimum of three years. For the first six months following sentencing, defendant will employ an independent corporate monitor, acceptable to the USAO and the Probation Office, to ensure compliance pursuant to the compliance program, and the corporate monitor shall submit quarterly reports to the United States Probation Office setting forth the details of monthly monitoring reviews and noting any violations of the corporate monitoring program. After the first six months of outside corporate monitoring, defendant may designate a non-independent corporate monitor, acceptable to the independent monitor, to submit quarterly reports to the Probation Office for the remaining term of probation.

//
//

THE USAO'S OBLIGATIONS

16. If defendant complies fully with all defendant's obligations under this agreement, the USAO agrees:

    a) To abide by all sentencing stipulations contained in this agreement.

    b) Except for criminal tax violations (including conspiracy to commit such violations chargeable under 18 U.S.C. § 371), not to further prosecute defendant for any offense arising out of defendant's conduct described in the stipulated factual basis set forth in this agreement, or any identical conduct engaged in by its affiliated companies, KDS, PI, ASI, and BSCP or their principal, John Tucker. Defendant understands that the USAO is free to prosecute defendant for any other unlawful past conduct or any unlawful conduct that occurs after the date of this agreement. Defendant agrees that at the time of sentencing the Court may consider the uncharged conduct in determining the applicable Sentencing Guidelines range, where the sentence should fall within that range, the propriety and extent of any departure from that range, and the determination of the sentence to be imposed after consideration of the sentencing guidelines and all other relevant factors.

BREACH OF AGREEMENT

17. If defendant, at any time between the execution of this agreement and defendant's sentencing, knowingly violates or fails to perform any of defendant's obligations under this agreement, the USAO may declare this agreement breached. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, defendant will not be able to

withdraw its guilty plea, and the USAO will be relieved of all of its obligations under this agreement. In particular:

    a) The USAO will no longer be bound by any agreements concerning sentencing and will be free to seek any sentence up to the statutory maximum for the crime to which defendant has pleaded guilty.

    b) The USAO will no longer be bound by any agreements regarding criminal prosecution, and will be free to prosecute defendant for any crime, including charges that the USAO would otherwise have been obligated not to prosecute pursuant to this agreement.

18. Following a knowing and willful breach of this agreement by defendant, should the USAO elect to pursue any charge not filed as a result of this agreement, then:

    a) Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the commencement of any such prosecution or action.

    b) Defendant gives up all defenses based on the statute of limitations, any claim of preindictment delay, or any speedy trial claim with respect to any such prosecution, except to the extent that such defenses existed as of the date of defendant's signing of this agreement.

## LIMITED MUTUAL WAIVER OF APPEAL AND COLLATERAL ATTACK

19. Defendant gives up the right to appeal any sentence imposed by the Court, and the manner in which the sentence is determined, provided that (a) the sentence is within the statutory maximum specified above and is constitutional, (b) the

Court in determining the applicable guideline range does not depart upward in offense level, and (c) the Court imposes a sentence within or below the range corresponding to the determined total fine range. Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or a explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction.

20. The USAO gives up its right to appeal the Court's sentence, provided that (a) the Court in determining the applicable guideline range does not depart downward in offense level, and (b) the Court orders restitution in the amount of $137,919.96.

## RESULT OF VACATUR, REVERSAL OR SET-ASIDE

21. Defendant agrees that if its count of conviction is vacated, reversed, or set aside, the USAO may ask the Court to void the entire plea agreement with both the USAO and defendant being released from all of their obligations under this agreement, except that should the USAO subsequently elect to pursue any charge not filed as a result of this agreement, the defendant agrees that he will be bound by the provisions of paragraph 18(a) and 18(b) pertaining to the tolling of the statute of limitations, pre-indictment delay and speedy trial.

## COURT NOT A PARTY

22. The Court is not a party to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' stipulations. Even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from any stipulation, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement. No one – not the prosecutor, defendant's attorney, or the Court – can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

## NO ADDITIONAL AGREEMENTS

23. Except as set forth herein, there are no promises, understandings or agreements between the USAO and defendant or defendant's counsel. Nor may any additional agreement, understanding or condition be entered into unless in a writing signed by all parties or on the record in court.

## PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

24. The parties agree and stipulate that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

1      This agreement is effective upon signature by defendant and an Assistant United States Attorney.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF CALIFORNIA

GEORGE S. CARDONA
Acting United States Attorney

_/s/ signature_           9/30/08
DANIEL J. O'BRIEN           Date
Assistant United States Attorney

     I have read this agreement and carefully discussed every part of it with the attorney representing Capital Data Products, L.L.C. I understand the terms of this agreement, and I voluntarily agree to those terms. The attorney has advised me of rights, of possible defenses, of the Sentencing Guideline provisions, and of the consequences of entering into this agreement on behalf of the corporation. No promises or inducements have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of the attorney in this matter.

_/s/ signature_           9-30-08
John Tucker           Date
President of
Defendant Capital Data Products LLC

     I am the attorney for defendant Capital Data Products LLC. I have carefully discussed every part of this agreement with my client. Further, I have fully advised my client of its rights,

13

of possible defenses, of the Sentencing Guidelines' provisions, and of the consequences of entering into this agreement. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

_____      9-30-08
James W. Spertus                   Date
Counsel for
Defendant Capital Data Products LLC

ATTACHMENT

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | CR 08- |
|---|---|---|
| Plaintiff, | ) | I N F O R M A T I O N |
| v. | ) | [18 U.S.C. § 286: Conspiracy] |
| CAPITAL DATA PRODUCTS LLC, | ) | |
| Defendants. | ) | |

The United States Attorney charges:

INTRODUCTORY ALLEGATIONS

At all times relevant to this Indictment:

1. Capital Data Products LLC ("Capital"), was a limited liability corporation engaged in the business of selling toner cartridges to businesses throughout the United States. Among Capital's customers are military bases and government offices.

2. During the period 2001 through April 2003, sales people employed by Capital made telephone sales of toner cartridges to government entities. These sales people were agents of Capital, acting within the scope of their duties as agents.

//

DOB/dob

[18 U.S.C. § 286]

A. OBJECTS OF THE CONSPIRACY

3. In or about 2001 and continuing to in or about April 2003, in Los Angeles County, within the Central District of California, and elsewhere, defendant Capital, and others known and unknown, knowingly and willfully conspired and agreed to defraud the United States, and agencies and departments thereof, by selling toner cartridges to the United States using a "price predication pitch," which contained materially false statements, and by obtaining payment from the United States for toner cartridges based on false claims.

B. MANNER AND MEANS OF THE CONSPIRACY

4. The means through which the conspiracy was to be accomplished were as follows:

The Price Predication Pitch

    a. A sale would be made to a military base or government office for a certain number of toner cartridges at a certain price.

    b. The customer account would be transferred to Capital's re-order department.

    c. A sales person from the re-order department would call the customer and falsely inform the customer that the original sale was predicated on the customer purchasing additional toner cartridges.

    d. The sales person would, with the intent to defraud, falsely inform the customer that additional purchases

of toner were required to close out the contract on the original sale; and

      e.  the sales person would cause the additional product to be shipped and cause an invoice to be issued to the government for the additional purchases.

Corporate Liability

5.  During the time frame 2001 through April 2003, there was an agreement between two or more agents of defendant, employed as sales persons, acting within the scope of their employment, and with the intent, in part, to benefit defendant, to defraud the United States, and agencies and departments thereof, by selling toner cartridges to the United States using this price predication pitch, and by obtaining payment from the United States for toner cartridges based upon false claims.

6.  Multiple agents of defendant became members of the conspiracy knowing its object and intending to help accomplish it. As a result of these sales, the United States paid to Capital $137,919.96 for the sale toner cartridges that were based upon the false and fraudulent price predication pitch. C. OVERT ACTS

7.  In furtherance of the conspiracy and to accomplish the objects of the conspiracy, members of the conspiracy committed various overt acts within the Central District of California, including, but not limited to, the following:

      Overt Act No. 1: On or about April 12, 2001, an agent of defendant, operating within the course and scope of their employment and with the intent to benefit defendant in part,

3

telephoned a government employee at Davis Monthan Air Force Base, Arizona and falsely informed him that defendant was going to ship an additional four toner cartridges to complete his previous order, and that he had already agreed, and was obligated, to purchase the additional four cartridges.

<u>Overt Act No. 2</u>: On or about February 27, 2003, an agent of defendant issued an invoice on behalf of defendant in the amount of $796.00 to a military employee in Washington, D.C., after using the price prediction pitch.

THOMAS P. O'BRIEN
United States Attorney

CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division

DOUGLAS AXEL
Assistant United States Attorney
Chief, Major Frauds Section

DANIEL J. O'BRIEN
Assistant United States Attorney
Major Frauds Section

4

# CERTIFICATE OF SERVICE

I, **Shaton L. McDaniel**, declare:

That I am a citizen of the United States and resident or employed in Los Angeles County, California; that my business address is the Office of United States Attorney, United States Courthouse, 312 North Spring Street, Los Angeles, California 90012; that I am over the age of eighteen years, and am not a party to the above-entitled action;

That I am employed by the United States Attorney for the Central District of California who is a member of the Bar of the United States District Court for the Central District of California, at whose direction I served a copy of:

## PLEA AGREEMENT FOR CAPITAL DATA PRODUCTS, LLC

service was:

[✘] Placed in a closed envelope, for collection and interoffice delivery addressed as follows:

[✘] Placed in a sealed envelope for collection and mailing via United States Mail, addressed as follows:

[ ] By hand delivery addressed as follows:

[ ] By facsimile as follows:

[ ] By messenger as follows:

[ ] By federal express as follows:

**JIM SPERTUS, ESQ.**
12100 Wilshire Boulevard, Suite 620
Los Angeles, California 90025

This Certificate is executed on **October 7, 2008** at Los Angeles, California. I certify under penalty of perjury that the foregoing is true and correct.

Shaton L. McDaniel